## **STATEMENT OF FACTS**

  Leading up to June 24, 2011, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that capacity, Detective Palchak ("UC") previously registered as a member and created an online profile on a predicated social network site which, based on the UC's experience and information gathered from other sources, is a site frequented by individuals that have a sexual interest in children.

  On June 24, 2011, at approximately 8:05 p.m., the UC posted a message in the public area of the "incest" chat room on the predicated social network site, inquiring as to the presence of "any other pervs" in the Washington, D.C. metropolitan area.  At approximately 8:07 p.m., an individual using the screen name "philabutt08" initiated a private instant message chat with the UC through the predicated social network site.  During the early portion of the instant message chat, "philabutt08" – who was later identified as the defendant, Phillip Lopez – identified himself as a 21-year-old male and asked the UC, "[W]hat are you into?"  When the UC responded that his preference was for "under 12," the defendant replied, "[I] like all . . . how old is your dau[ghter]?"  When the UC advised that the purported child was age 12, the defendant asked, "[D]o you play?"  The defendant then asked the UC whether he had ever engaged in sexual acts with another man "in front of your lil girl . . . would you want to?  [W]hat do you think about you fucking him and him fucking her?"  As the online conversation continued, the defendant noted that he lived close to the DC metro area, in Woodbridge, Virginia.  At approximately 8:15 p.m. on June 24, 2011, the defendant and the UC shifted their online conversation to another instant message site, in which the defendant used the screen-name "Phillip Lopez."

  As the online exchange continued on June 24, 2011, the UC posed as an individual that had sexual access to his girlfriend's 12-year-old daughter, who would be coming to Washington, D.C. from Virginia.  The UC asked the defendant if he like[d] little ones too" and whether he had experience with any – to which the defendant responded, "[Y]es I do and no [I] don't have any exp[erience]."  When the UC asked the defendant if the 12-year-old was too young for him, the defendant responded that he "would be comfortable" and noted that she looked "cute" when sent a morphed, clothed picture of the purported child.

  During the course of the online conversation on June 24, 2011, the defendant and the UC made arrangements to meet on Tuesday, June 28, 2011, after which the defendant noted, "[I] wish this could happen tomorrow."  The defendant and the UC agreed to meet each other first in order to establish that neither was affiliated with law enforcement, after which they would engage in sexual acts with each other and the purported 12-year-old girl.  In the course of discussing their agreement, the defendant asked whether he or the UC could take photographs of the purported child performing oral sex on the defendant.  In discussing the sexual acts in which he intended to engage the purported child, the defendant noted, "[M]aybe [I] can fuck her while she sucks you then have you suck my cock covered with her juices."  The defendant also discussed performing oral sex on the purported child, asking, "[W]hat do you think if we take turns and then while one eats her the other can suck the others cock[?]"  As the online exchange continued, the defendant provided his cell phone number and agreed to have additional communications via telephone calls and text messages. The defendant also reiterated that he would bring his camera, telling the UC, "[I] want to take a lot of pics if you don't mind."  The defendant also asked the UC for additional pictures of the girl, to which the UC responded by sending another morphed, clothed picture of the purported child.

On June 27, 2011, the defendant and the UC engaged in additional instant message conversations online. The defendant noted that he was "thinking about tomorrow," but was nervous because he did not want "to get in trouble . . . that's the big one for me." After agreeing to no longer reference the purported child's age online, the defendant engaged in additional discussion regarding the sexual acts in which they would engage the purported child "tomorrow." The defendant asked the UC whether he wanted the purported girl to perform oral sex on them both simultaneously, and noted his desire to ejaculate on the child. The defendant also asked if he could kiss the child, and noted, "[I] was thinking you lay on your back as she rides your cock facing me helping me fuck you." During the chat conversation on June 27, 2011, the defendant again inquired whether he could bring his camera and again noted, "[I] want to take a lot of pics of you and her sucking me." The defendant and the UC also engaged in recorded one-party consent telephone calls, during which they discussed the planned meeting.

The defendant and the UC continued their online exchange on June 28, 2011, during which the defendant noted that he was "really nervous." When specifically advised by the UC that, if he was "not cool with meeting that's cool too . . . just let me know," the defendant responded, "Ya [I] want to." The defendant also asked to see a photo of the purported child when they meet "so it can ease my nerv[e]s . . . [i]f you can do that ill know ur real u know." As the online conversation continued, the UC noted that the purported child would be dropped-off between 8:30 and 9:00 p.m. that same evening – to which the defendant responded, "Hopefully earlier." As the chat approached conclusion on June 28, 2011, the defendant noted, "I hope u are real."

On Tuesday, June 28, 2011, at approximately 6:15 p.m., the defendant was arrested at the pre-arranged location without incident. The defendant was transported to the FBI for processing. The defendant produced a Texas driver's license bearing the name "Phillip Lopez." A search incident to the defendant's arrest recovered a digital camera from his pants pocket. The defendant waived his <u>Miranda</u> rights and provided a statement, during which he admitted to engaging in the online chats with the UC. The defendant also admitted initially that he had traveled from Woodbridge, Virginia with the intention of engaging in sexual acts with the UC and the purported 12-year-old girl and taking photographs of it, but later indicated that he intended to engage in sexual acts with the UC only, before the purported child arrived. The defendant further admitted to possessing images of child pornography on a computer media device in his hotel room in Woodbridge, Virginia.

       DETECTIVE TIMOTHY PALCHAK
       METROPOLITAN POLICE DEPARTMENT

Sworn and subscribed to before me this _____ day of June, 2011.

       ALAN KAY
       United States Magistrate Judge